**Anne THEROUX, Appellant,**

v.

**Samuel VICK, M.D., Appellee.**

No. 04–04–00538–CV.

Court of Appeals of Texas, San Antonio.

Feb. 9, 2005.

Rehearing Overruled March 30, 2005.

---

E.B. Barretto, Law Offices of Sinkin & Barretto, P.L.L.C., San Antonio, for appellant.

Edward C. Mainz, Jr., Robert R. Biechlin, Jr., Thornton, Summers, Biechlin, Dunham & Brown, L.C., San Antonio, for appellee.

Sitting: ALMA L. LÓPEZ, Chief Justice, SANDEE BRYAN MARION, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by SANDEE BRYAN MARION, Justice.

This is an appeal from the trial court's order rendering summary judgment in favor of appellee. We conclude the trial court properly rendered summary judgment on appellant's fraud and false imprisonment claims. Therefore, we affirm.

## BACKGROUND

In August 1999, appellant, Anne Theroux, was a patient under the care of Methodist Healthcare System of San Antonio, Ltd. d/b/a Methodist Specialty Transplant Hospital and appellee, Dr. Samuel. Vick. Theroux was hospitalized for a kidney

transplant from herself to her husband. In October 2001, Theroux sued the hospital and Vick, alleging claims for medical negligence, false imprisonment, lack of consent, and failure to disclose. Because Theroux did not file expert reports as required by the Texas Medical Liability and Insurance Improvement Act ("the MLIIA"),[1] the hospital and Vick moved to dismiss her claims. The trial court granted the hospital's motion to dismiss and severed Theroux's claims against the hospital. The trial court dismissed all of Theroux's claims against Vick, except her claims for fraud and false imprisonment.

Vick filed a motion for traditional summary judgment, asserting that Theroux's fraud claim was a recast medical negligence claim and her false imprisonment claim was barred by the statute of limitations; and a no-evidence motion for summary judgment, asserting there was no evidence to support the fraud claim. The trial court granted the motion without stating its grounds, and this appeal by Theroux ensued.

## FRAUD CLAIM

 The MLIIA applies only to "health care liability claims," which are defined as claims "against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety which proximately results in injury to or death of the patient, whether the patient's claim or cause of action sounds in tort or contract." *See* former article 4590i, § 1.03(4). Plaintiffs may not avoid the MLIIA by recasting their causes of action as something other than health care liability claims. *See Garland Cmty. Hosp. v. Rose*, 156 S.W.3d 541, 543, (Tex.2004); *MacGregor Med. Ass'n v. Campbell*, 985 S.W.2d 38, 40 (Tex.1998) (per curiam); *Zuniga v. Healthcare San Antonio, Inc.*, 94 S.W.3d 778, 781 (Tex. App.-San Antonio 2002, no pet.). However, courts must be equally careful not to extend the MLIIA's reach beyond its stated bounds. *Zuniga*, 94 S.W.3d at 781. Not every action taken by a health care provider or every injury suffered by a patient falls within the ambit of the MLIIA. *Id.* The act or omission complained of must be an inseparable part of the rendition of medical services. See *Walden v. Jeffery*, 907 S.W.2d 446, 448 (Tex.1995); *see also Drury v. Baptist Memorial Hosp. Sys.*, 933 S.W.2d 668, 676 (Tex.App.-San Antonio 1996, writ denied).

 A cause of action will be considered a health care liability claim if it is based on a breach of a standard of care applicable to health care providers. *Sorokolit v. Rhodes*, 889 S.W.2d 239, 242 (Tex.1994); *see also MacGregor Med. Ass'n*, 985 S.W.2d at 40–41. To determine whether a cause of action fits this definition, we look, not merely at the pleadings, but at the underlying nature of the claim. *MacGregor Med. Ass'n*, 985 S.W.2d at 40; *Sorokolit*, 889 S.W.2d at 242. We examine whether the claim involves the diagnosis,

1. Act of May 30, 1977, 65th Leg., R.S., ch. 817, 1977 Tex. Gen. Laws 2039, (formerly codified at Tex.Rev.Civ. Stat. Ann. art. 4590i), repealed by, Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 864, 884 (hereafter "former article 4590i"). Many of the provisions of former article 4590i have been re-codified in the Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 74.001–74.507 (Vernon Supp.2004–2005). However, a medical malpractice suit that was filed before September 1, 2003, such as the present case, "is governed by the law in effect immediately before" the changes in the law that were made by the Legislature. Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 23.02(d), 2003 Tex. Gen. Laws 864, 899. Therefore, all citation references hereinafter are to the former statute.

care, or treatment of the patient, and whether expert testimony would be required to prove the alleged negligence. *See Rogers v. Crossroads Nursing Serv., Inc.*, 13 S.W.3d 417, 419 (Tex.App.-Corpus Christi 1999, no pet.). Therefore, in determining whether the trial court erred in granting Vick's motion for a traditional summary judgment, we must decide whether the court correctly characterized Theroux's fraud claim as a health care liability claim.

■ In her amended petition, Theroux alleged (1) Vick misrepresented his training and experience; (2) Vick knew that neither she nor her husband would have consented to the surgery if the invasive type of surgery would have been a risk; (3) Vick fraudulently induced her into consenting to the surgery by misrepresenting his experience and training and misrepresenting that only the laproscopic form of surgery would be used; and (4) after the surgery began, Vick performed an invasive surgery without her consent. Theroux alleged Vick was liable for fraudulently inducing her into consenting to elective surgery by (1) misrepresenting his prior experience and training; (2) failing to fully and completely disclose the risks and/or hazards of excessive scarring, adhesions, and lesions; and (3) failing to fully and completely disclose and/or misrepresenting the risks of a more invasive surgery that could occur when Vick knew she would not have consented if any such risk existed.

Vick argues that the underlying nature of Theroux's fraud claim is an informed consent claim, governed by the MLIIA, which provides:

In a suit against a physician or health care provider involving a health care liability claim that is based on the failure of the physician or health care provider to disclose or adequately to disclose the risks and hazards involved in the medical care or surgical procedure rendered by the physician or health care provider, the only theory on which recovery may be obtained is that of negligence in failing to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent.

*See* former article 4590i, § 6.02.

We agree with Vick. The representations Theroux alleges all have to do with whether Vick's selection of the surgical procedure and performance of it met the standard of care for doctors in such circumstances and whether he adequately disclosed the risks of the surgical procedure to her. These allegations are nothing more than Theroux's attempt to recast her malpractice claim as a fraud claim. Therefore, Vick conclusively established his entitlement to summary judgment on Theroux's fraud claim and the trial court did not err in dismissing this claim.

### FALSE IMPRISONMENT CLAIM

■ Vick alleged, and Theroux did not dispute, that she was hospitalized from August 3, 1999 until August 10, 1999. It is during this time period that Vick allegedly prevented Theroux from leaving the hospital. Theroux filed suit on October 15, 2001, two years and two months after her claim accrued. When Theroux filed her amended petition, in which she raised only her fraud and false imprisonment claims, she deleted all reference to the MLIIA. In his motion for summary judgment, Vick asserted Theroux's false imprisonment claim was barred by the general two-year statute of limitations. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.003(a) (Vernon 2002). In response to Vick's motion for summary judgment, Theroux alleged she timely sent an article 4590(i) notice letter to Vick, which notice tolled the limitations period

for seventy-five days. *See* former article 4590i, § 4.01(a); *see also De Checa v. Diagnostic Center Hospital, Inc.*, 852 S.W.2d 935, 937–38 (Tex.1993) (notice given in accordance with section 4.01(a) tolls the applicable statute of limitations for seventy-five days, effectively creating a two-year-and-seventy-five-day statute of limitations). As a result, according to Theroux, the deadline to file suit was extended until October 23, 2001; thus, her suit was timely filed.

In his reply to her response, Vick argued that (1) the tolling period did not apply because Theroux's false imprisonment claim did not fall within the scope of the MLIIA and (2) even if the tolling period applied, Theroux's false imprisonment claim should be dismissed because she failed to file an expert's report as required by the MLIIA. Theroux does not dispute that she failed to file an expert's report. Instead, she argues that "not all theories of recovery ... brought under [the MLIIA] require an expert [sic] report."

A medical malpractice plaintiff must furnish each defendant physician or health care provider with one or more expert reports no later than the 180th day after the lawsuit is filed. *See* former article 4590i, § 13.01(d). The written report must provide a fair summary of the expert's opinions regarding the applicable standard of care, the breach of that standard by the physician or health care provider, and the causal relationship between the breach and the injury. *See id.* at § 13.01(r)(6). If the plaintiff fails to furnish a suitable expert report to a medical malpractice defendant within the 180–day time period, upon the filing of a motion challenging the existence or adequacy of such a report, the statute directs the trial court to enter an order dismissing the lawsuit. *See id.* at § 13.01(e)(3).

We need not decide whether Theroux's false imprisonment claim is a health care claim. If her claim does not fall within the scope of the MLIIA, the claim is barred by the general two-year statute of limitations because she did not file suit within two years of the alleged claim. On the other hand, if her claim falls within the MLIIA's scope and the tolling period applies, Theroux was required to file an expert report, which she did not do. Therefore, in either event, the trial court did not err in dismissing this claim.

### CONCLUSION

The trial court properly rendered judgment in favor of Vick on Theroux's fraud and false imprisonment claims. Accordingly, we affirm the trial court's judgment.