In The



Court of Appeals



Ninth District of Texas at Beaumont



 __________________ 


 

NO. 09-06-148 CV


______________________


 

EMPOWERMENT OPTIONS, INC. AND RONA RIGSBY, Appellants



V.



KATHY EASLEY, INDIVIDUALLY AND AS GUARDIAN OF 


DONALD EARL WILLIAMS, AN INCOMPETENT PERSON, Appellee






On Appeal from the 221st District Court


 Montgomery County, Texas 


Trial Cause No. 05-10-09395 CV






MEMORANDUM OPINION



 Appellants Empowerment Options, Inc. and Rona Rigsby, assert plaintiff Kathy
Easley, individually and as guardian of Donald Earl Williams, failed to timely file an expert
report in compliance with section 74.351 of the Texas Practice and Remedies Code. See
Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (Vernon 2003). Appellants appeal the trial
court's orders denying their motions to dismiss. We reverse in part and remand.

 Easley sued Empowerment Options, Inc. and Rona Rigsby alleging negligence and
seeking damages for personal injury, mental anguish, medical expenses, and physical
disfigurement sustained by her brother while a resident at an Empowerment facility. 
Empowerment filed special exceptions and stated that "plaintiffs have filed this medical
negligence lawsuit against these defendants, stemming from a course of medical treatment
administered to plaintiff, Donald Earl Williams during February, 2005." More than 120 days
after Easley filed suit, Easley nonsuited appellants and re-filed the lawsuit under the Texas
Medical Liability Act. See Tex. Civ. Prac. & Rem. Code Ann. § 74.001-74.507 (Vernon
2003). The petition in the second lawsuit mirrored the first lawsuit with the exception of the
addition of (1) a paragraph stating compliance with Chapter 74, (2) a malice claim against
both defendants, and (3) an attached registered nurse's curriculum vitae and expert report. (1) 

 Appellants challenge the trial court's order denying their motions to dismiss Easley's
healthcare liability claims under section 74.351, which provides in relevant part: 

 (a) In a health care liability claim, a claimant shall, not later than the 120th day
after the date the claim was filed, serve on each party or the party's attorney
one or more expert reports, with a curriculum vitae of each expert listed in the
report for each physician or health care provider against whom a liability claim
is asserted. The date for serving the report may be extended by written
agreement of the affected parties.

 . . . .


 (b) If, as to a defendant physician or health care provider, an expert report has not
been served within the period specified by Subsection (a), the court, on the motion of
the affected physician or health care provider, shall, subject to Subsection (c), enter
an order that:

 (1) awards to the affected physician or health care provider reasonable
attorney's fees and costs of court incurred by the physician or health
care provider; and

 (2) dismisses the claim with respect to the physician or health care
provider, with prejudice to the refiling of the claim.


Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a)-(b) (Vernon 2003). (2) Ordinarily, an
appellate court reviews the trial court's ruling on a motion to dismiss a healthcare liability
claim under an abuse of discretion standard. See Bowie Mem'l Hosp. v. Wright, 79 S.W.3d
48, 52 (Tex. 2002) (citing Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d
873, 877 (Tex. 2001)). Where, as here, the issues involve statutory construction and the
applicability of Chapter 74 to plaintiff's claims, a de novo standard of review is applied. See
Buck v. Blum, 130 S.W.3d 285, 290 (Tex. App.--Houston [14th Dist.] 2004, no pet.); Ponce
v. El Paso Healthcare Sys., Ltd., 55 S.W.3d 34, 36 (Tex. App.--El Paso 2001, pet. denied)
(citing Johnson v. City of Fort Worth, 774 S.W.2d 653, 656 (Tex. 1989)).

 Appellants maintain that because the first lawsuit asserted a "health care liability
claim," Easley's expert report filed contemporaneously with the second lawsuit failed to
meet the 120-day deadline required by section 74.351. Easley contends the first lawsuit only
asserted an ordinary negligence claim and a "health care liability claim" was not asserted
until the filing of the second lawsuit. 

 The Texas Medical Liability Act defines a "health care liability claim" as the
following:

 [A] cause of action against a health care provider or physician for treatment,
lack of treatment, or other claimed departure from accepted standards of
medical care, or health care, or safety or professional or administrative services
directly related to health care, which proximately results in injury to or death
of a claimant, whether the claimant's claim or cause of action sounds in tort
or contract.


Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13) (Vernon 2003). (3) The Act defines
"health care" to mean "any act or treatment performed or furnished, or that should have been
performed or furnished, by any health care provider for, to, or on behalf of a patient during
the patient's medical care, treatment, or confinement." Id. § 74.001(a)(10); see Diversicare
Gen. Partner, Inc. v. Rubio, 185 S.W.3d 842, 847-48 (Tex. 2005)(discussing application of
similar provision in former law). 

 In determining whether a particular case presents a "health care liability claim," a
court examines the underlying nature of the allegations. Garland Cmty. Hosp. v. Rose, 156
S.W.3d 541, 543-44 (Tex. 2004) (citing Sorokolit v. Rhodes, 889 S.W.2d 239, 242 (Tex.
1994)). The court is not bound by the party's characterization of the claim. See Theroux v.
Vick, 163 S.W.3d 111, 114 (Tex. App.--San Antonio 2005, pet. denied). A plaintiff cannot
use artful pleading to avoid the Act's requirements when the essence of the suit is a
healthcare liability claim. Garland Cmty. Hosp., 156 S.W.3d at 543. 

 The first lawsuit alleged Williams suffered injuries while he was a resident at the
facility, operated and managed by Defendants Empowerment and Rigsby. Easley's first
petition alleged appellants' negligence caused the injuries to Williams while a resident at the 
facility. (4) Because it seems beyond dispute the second lawsuit arises out of the same injuries
and occurrences as the first lawsuit, and because the allegations in both petitions were largely
the same, we consider the facts asserted in the expert report filed with the second lawsuit. (5)

 The expert report provided by registered nurse Wanda Sanchez stated that Williams,
a forty-eight-year-old male with significant mental retardation arrived at the Conroe Regional
Medical Center Emergency Department from the group home Empowerment Option Conroe-Huntsville House. He presented "for evaluation of wounds on his right thigh, hip and skin
breakdown." The admitting physician's diagnosis was "[s]econd degree burn to right
buttocks, cellulitis and thrombocytopenia with a platelet count of 92." According to the
expert report, a surgical consultation noted Williams had "skin slough, cellulitis anterior
thighs with 3% total body surface area affected with second degree burns." Williams stayed
in the hospital for fourteen days.

 The Texas Supreme Court in Rubio explained the difference in the relationship
between premises owners and invitees and between healthcare facilities and their patients in
part as follows:

 The obligation of a health care facility to its patients is not the same as the
general duty a premises owner owes to invitees. Health care staff make
judgments about the care, treatment, and protection of individual patients and
the patient populations in their facilities based on the mental and physical care
the patients require. The health care standard applies the ordinary care of
trained and experienced medical professionals to the treatment of patients
entrusted to them. 


Rubio, 185 S.W.3d at 850 (citation omitted). Easley's negligence claims against appellants
are claims for breaches of the standard of care for a healthcare provider, because the
supervision, treatment, and protection of Williams are inseparable from the healthcare
services provided to him as a resident at the Empowerment facility. See id. at 853
("[J]udgments concerning health and medical care, including protection of patients, are made
by health care professionals as part of the care and treatment of the patients admitted to their
facilities.").

 Easley's negligence claims also alleged departures from accepted standards of safety. 
See Tex. Civ. Prac. & Rem. Code Ann. § 74.001(b). The definition of "safety" is the
condition of being "'untouched by danger; not exposed to danger; secure from danger, harm
or loss.'" Rubio, 185 S.W.3d at 855 (quoting Black's Law Dictionary 1336 (6th ed.
1990)). The professional duties of supervision, monitoring, and protection of a patient
population at a facility implicate both the accepted standards of healthcare and safety under
the Act. See Rubio, 185 S.W.3d at 855. 

 Easley also argues her negligence claim in the first lawsuit is not a "health care
liability claim," because expert testimony in the healthcare field is not necessary to establish
the standard of care. The necessity of expert testimony from a medical or healthcare
professional to prove a claim may be an important factor in determining whether a cause of
action is an inseparable part of the rendition of medical or healthcare services. Id. at 848;
Garland Cmty. Hosp., 156 S.W.3d at 544. Expert testimony is necessary to establish the
applicable standard of care "when the alleged negligence is of such a nature as not to be
within the experience of the layman." FFE Transp. Servs., Inc. v. Fulgham, 154 S.W.3d 84,
90 (Tex. 2004)(quoting Roark v. Allen, 633 S.W.2d 804, 809 (Tex. 1982)). In determining
whether expert testimony is necessary to establish negligence, courts have considered
whether the acts at issue involve the use of techniques unfamiliar to the ordinary person. 
Fulgham,154 S.W.3d at 91. Generally, standards relating to the care, treatment, and
protection of the mentally incompetent at residential facilities are not within the common
knowledge or experience of the general public. See Rubio, 185 S.W.3d at 851 ("It is not
within the common knowledge of the general public to determine the ability of patients in
weakened conditions to protect themselves[.]"). 

 Easley contends that even if the first lawsuit stated a "health care liability claim,"
section 74.351's 120-day deadline did not carry over to the second lawsuit after Easley
nonsuited the first lawsuit without prejudice. In construing a statute, our objective is to
determine and give effect to legislative intent. McIntyre v. Ramirez, 109 S.W.3d 741, 745
(Tex. 2003). In discerning that intent we begin with the "'plain and common meaning of the
statute's words.'" Id. (quoting State ex rel. State Dep't of Highways & Pub. Transp. v.
Gonzalez, 82 S.W.3d 322, 327 (Tex. 2002)). Under the plain language of section 74.351(a),
the 120-day period begins on the date the claimant files a healthcare liability claim, not the
date the claimant files another lawsuit asserting the same claim. See Mokkala v. Mead, 178
S.W.3d 66, 71 (Tex. App.--Houston [14th Dist.] 2005, pet. filed). Easley's nonsuit and
refiling of the lawsuit did not provide her with a new 120-day period within which to file an
expert report. See id.

 Easley maintains appellants are barred by waiver and estoppel from contending that
her lawsuit was a healthcare liability claim. She claims their failure to invoke Chapter 74 in
their answers and discovery, along with their serving of discovery prohibited in a healthcare
liability claim, withholding of medical records, and failure to move for dismissal in the first
lawsuit, constitute acts inconsistent with their position that Chapter 74 governed the first
lawsuit. Appellants' participation in discovery is insufficient to establish waiver, because
an attempt to learn more about the case in which one is a party does not demonstrate an intent
to waive the right to move for dismissal. Jernigan v. Langley, 111 S.W.3d 153, 157 (Tex.
2003) (applying former version of section 74.351). Chapter 74 imposes no deadline for filing
a motion to dismiss. See Tex. Civ. Prac. & Rem. Code Ann. § 74.001-74.507. The record
does not establish appellants acted inconsistently with their intent to rely upon their right to
file a motion to dismiss. Under the circumstances, we are not persuaded appellants are
barred by their own conduct from filing the motions to dismiss. 

 We conclude Easley's negligence claim asserted in her first lawsuit was a healthcare
liability claim subject to the reporting requirements of the Act. The 120-day period for
serving the expert report required by section 74.351(a) began the date Easley filed the first
lawsuit asserting the claim. The 120-day period expired before Easley nonsuited appellants. 
Because Easley was not entitled to more than 120 days under the statute, her expert report
was not timely served. See Tex. Civ. Prac. Rem. Code Ann. § 74.351(a). The trial court
abused its discretion in denying appellants' motions to dismiss Easley's healthcare liability
claims. 

 Nevertheless, it is possible certain of plaintiff's alternative claims, specifically the
intentional abuse claim, relate to acts that are separable from the healthcare claims. To the
extent the trial court denied appellants' motions to dismiss claims not involving healthcare,
the trial court did not abuse its discretion.

 We reverse the orders of the trial court and remand with instructions to the trial court
to dismiss Easley's healthcare liability claims against appellants. 

 REVERSED IN PART AND REMANDED.

 ____________________________

 DAVID GAULTNEY

 Justice

Submitted on October 5, 2006

Opinion Delivered November 9, 2006


Before McKeithen, C.J., Gaultney and Kreger, J.J.


1. Easley subsequently amended the petition to add other defendants and assert additional
alternative claims, including claims of intentional abuse. 
2. Effective September 1, 2005, the Legislature amended section 74.351(a) to require a
claimant to serve an expert report in a healthcare liability claim not later than the 120th day after the
date the original petition was filed. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (Vernon
2005), amended by Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 1, 2005 Tex. Gen. Laws 1590,
1590 (current version at Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (Vernon Supp. 2006)). 
3. Neither party disputes Empowerment is a "healthcare provider" as defined by the
Texas Medical Liability Act. See Tex. Civ. Prac. & Rem. Code § 74.001(a)(11)(I) (Vernon
2003).
4. Clients receiving services from mental retardation facilities and community centers
have the right to protection from mistreatment, abuse, neglect, and exploitation. 40 Tex.
Admin. Code § 8.624(2) (Vernon Supp. 2006). 
5. Easley argues the second lawsuit should not be considered in determining the nature
of the allegations in the first lawsuit. Easley contends "[a] 'health care liability claim' must
be stated within the petition itself, not shown by extrinsic facts." The petitions in the cases
cited by Easley in support of this contention provided sufficient facts from which a court
could determine whether the nature of the allegations established a 'health care liability
claim.' See Rubio, 185 S.W.3d at 849 (facts alleged in the petition that nursing home held
itself out to the public as a qualified and competent nursing home); Boothe v. Dixon, 180
S.W.3d 915, 917 (Tex. App.--Dallas 2005, no pet.) (facts alleged in petition regarding
misrepresentations made supporting fraud, breach of fiduciary duty, and DTPA claims);
Hector v. Christus Health Gulf Coast, 175 S.W.3d 832, 835-36 (Tex. App.--Houston [14th
Dist.] 2005, pet. denied) (facts alleged in the petition that plaintiff fell from an operating
table during surgery). Those cases did not involve a comparison of the allegations in separate
petitions.