In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-07-469 CV


____________________



CARE CENTER, LTD., Appellant



V.



BETTY SUTTON, Appellee






On Appeal from the 88th District Court


Hardin County, Texas


Trial Cause No. 46,907






 MEMORANDUM OPINION


 This appeal concerns the trial court's ruling on a motion to dismiss a health care
liability claim in which a health care provider requested a dismissal because expert reports
were not timely served within the statutorily-required period. See Tex. Civ. Prac. & Rem.
Code Ann. § 51.014(a)(9) (Vernon Supp. 2007), § 74.351(a)-(b) (Vernon 2005 & Vernon
Supp. 2007). (1) In a single issue on appeal, the health care provider, Care Center, contends
that the trial court erred in denying its motion to dismiss. We reverse the trial court's order
and remand this cause for further proceedings consistent with this opinion.

Background

 On September 18, 2006, Betty Sutton sued Regency Nursing Center Partners of
Lumberton, Ltd. and Priority-1 EMS, LLC, and alleged that they injured her on December
16, 2004, while moving her during her stay at Lumberton Rehabilitation Center. Betty
attached reports and curricula vitae of two experts to her original petition. Subsequently, in
November 2006, Betty filed her first amended petition and added additional defendants,
including Care Center. (2) The reports and curricula vitae attached to Betty's original petition
were not attached to her first amended petition.

 On April 18, 2007, the trial court entered an agreed discovery and docket control plan
for a level three case. According to Care Center, it was first served with expert reports and
curricula vitae in June 2007, when Betty filed supplemental responses to disclosure requests. 
On July 11, 2007, Care Center filed its motion to dismiss and asserted that Betty had not
timely served it with an expert report. On July 31, 2007, Betty filed her second amended
petition that expanded upon her complaints about Care Center's acts and omissions. 
Following an oral hearing, the trial court denied Care Center's motion to dismiss.

 Care Center timely requested findings of fact and conclusions of law, but the trial
court entered none. Care Center appeals and asserts that the trial court was required to
dismiss Betty's suit because she did not timely serve it with the required section 74.351
report. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a),(b). After Care Center
perfected its appeal, we received Betty's suggestion of death. As a result, Betty's estate is
the current real party in interest to the appeal. 


Analysis

 Generally, we review rulings on motions to dismiss health care liability claims for
abuse of discretion. Bowie v. Mem'l Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002) (citing
Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 878 (Tex. 2001)). 
However, when the issue involves statutory construction of Chapter 74, we apply a de novo
standard of review. Intracare Hosp. N. v. Campbell, 222 S.W.3d 790, 794-95 (Tex.
App.-Houston [1st Dist.] 2007, no pet.) (citing Brown v. Villegas, 202 S.W.3d 803, 805
(Tex. App.-San Antonio 2006, no pet.)); Buck v. Blum, 130 S.W.3d 285, 290 (Tex.
App.-Houston [14th Dist.] 2004, no pet.).

 Under the version of section 74.351 that existed on the date of Betty's alleged injury,
a health care liability claimant was required to serve her expert report and curriculum vitae
(collectively referred to as "expert report") on each defendant health care provider within 120
days of the filing of her claim. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). If the
health care claimant failed to meet that deadline, the statute required the trial judge to dismiss 
the health care liability claim with prejudice and to award the health care provider its
reasonable attorney's fees and costs of court. Id. § 74.351(b). Under the statute, extensions
of the report deadline are possible. Id. § 74.351(a) ("The date for serving the report may be
extended by written agreement of the affected parties."). 

 Since Betty filed suit against Care Center on November 7, 2006, under the 120-day
deadline, Betty's initial expert report deadline was March 7, 2007. It is uncontested that
Betty did not serve expert reports by that date, but her estate contends that the parties agreed
to extend the deadline. Additionally, Betty's estate claims that because Betty's second
amended petition, filed July 31, 2007, asserted new claims against Care Center, the statute
allows another 120-day period under the statute's report requirement with respect to any new
claims.

 A. Was there an agreement to extend the section 74.351 report deadline?

 On April 18, 2007, the trial court entered an "Agreed Discovery Control Plan and
Special Setting" order ("agreed order") signed by all of the parties. On appeal, Betty's estate
asserts that the agreed order constitutes the parties' written agreement to extend the time
within which Betty was required to serve the required section 74.351 expert report. The
relevant portion of the agreed order states:

 Deadline for Plaintiff to designate all independently retained
expert witnesses Plaintiff intends to call to testify at the trial of
this cause and to produce a report and curricula vitae is: July 2,
2007.


 Deadline for Defendants to designate all independently retained
expert witnesses Defendants intend to call to testify at the trial
of this cause and produce a report and curricula vitae is: August
2, 2007.


Betty's estate argues that her June 2007 report, served prior to the docket control deadline
to designate testifying expert witnesses and provide their respective reports, was timely. 

 We apply contract principles to ascertain and give effect to the parties' intentions as
expressed in an agreement to determine whether the parties' agreed order served as an
agreement to extend section 74.351's report deadline. See Frost Nat'l Bank v. L & F
Distribs., Ltd., 165 S.W.3d 310, 311-12 (Tex. 2005); see also Emeritus Corp. v. Highsmith,
211 S.W.3d 321, 329 (Tex. App.-San Antonio 2006, pet. denied). These contract principles
include considering whether an agreement is ambiguous, which is a question of law. Lopez
v. Munoz, Hockema & Reed, L.L.P., 22 S.W.3d 857, 861 (Tex. 2000). In turn, ambiguity is
determined by examining the agreement as a whole in light of the circumstances present
when the parties entered into the agreement. See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.
v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995). Ambiguous agreements are
susceptible to more than one reasonable interpretation. Seagull Energy E & P, Inc. v. Eland
Energy, Inc., 207 S.W.3d 342, 345 (Tex. 2006). However, the ambiguity must be evident by
examining the writing itself; ambiguity is not created simply because the parties offer
conflicting interpretations. Lopez, 22 S.W.3d at 861. On the other hand, an agreement is not
ambiguous if it is so worded that it can be given a definite or certain legal meaning. Id.
Unambiguous written instruments are construed as a matter of law by the court. MCI
Telecomms. Corp. v. Tex. Utils. Elec. Co., 995 S.W.2d 647, 650-51 (Tex. 1999). 

 With respect to extending the health care liability report deadline, section 74.351's
only requirement is that the agreement be in writing. Tex. Civ. Prac. & Rem. Code Ann.
§ 74.351(a). Betty's estate contends that the agreed order constitutes the writing that extends
section 74.351's report deadline. However, we note that the agreed order does not
specifically refer to or mention section 74.351. Additionally, the agreed order does not
generally state that it supercedes and extends any other applicable statutory deadline.

 In construing whether agreed orders extend section 74.351's report deadline, other
courts of appeals have held that agreed orders that expressly fail to mention section 74.351
or that do not contain language that suggests an agreement between the parties to extend
statutory deadlines are insufficient to constitute a written agreement to extend section
74.351's deadline. Lal v. Harris Methodist Fort Worth, 230 S.W.3d 468, 474 (Tex.
App.-Fort Worth 2007, no pet.); see also Hall v. Mieler, 177 S.W.3d 278, 281-82 (Tex.
App.-Houston [1st Dist.] 2005, no pet.) (holding that agreed order did not extend statutory
deadline because it did not address statutory deadline for expert reports); Rugama v. Escobar,
No. 04-05-00764-CV, 2006 Tex. App. LEXIS 2697, at *7 (Tex. App.-San Antonio April 5,
2006, no pet.) (mem. op.) (nothing in the agreed order, either directly or by implication,
suggested the parties agreed to extend the statutory deadline).

 In identical provisions, the agreed order before us set forth specific dates by which the
parties were to designate their "retained expert witnesses [they] intend to call to testify at the
trial" and provide the experts' respective reports. This type of provision has been interpreted
as insufficient to infer an agreement between the parties to extend section 74.351's 120-day
deadline. See Lal, 230 S.W.3d at 474 (scheduling order did not extend section 74.351's
deadline, but instead was intended to control deadlines under the Rules of Civil Procedure);
Brock v. Sutker, 215 S.W.3d 927, 929 (Tex App.-Dallas 2007, no pet.) (scheduling order did
not extend the statutory deadline when it did not mention section 74.351, and nothing in the
order suggested the parties agreed to extend the statutory deadline). 

 In this case, Betty and Care Center entered the agreed order after the 120-day deadline
expired. In some cases involving issues about the timeliness of statutory reports, appellate
courts have observed that "the defendant would have no incentive for extending a deadline
already missed." McDaniel v. Spectrum Healthcare Res., Inc., 238 S.W.3d 788, 795 (Tex.
App.-San Antonio 2007, pet. filed); see also Olveda v. Sepulveda, 141 S.W.3d 679, 683-84
(Tex. App.-San Antonio 2004, pet. denied) (discovery scheduling order did not extend the
deadline when it was issued a month after the deadline passed and the order's language did
not indicate that it encompassed the statutory expert report deadline); Finley v. Steenkamp,
19 S.W.3d 533, 539-40 (Tex. App.-Fort Worth 2000, no pet.) (scheduling order did not
extend the deadline after it had passed, order did not designate a date to provide expert
reports, only testifying expert witnesses, and nothing in the order implied that the trial court
intended to alter the statutory expert report deadline). 

 On appeal, Betty's estate claims that the language in the agreed order is "practically
the same" as the language contained in the docket control order in McDaniel. See McDaniel,
238 S.W.3d at 792. Betty's estate contends that the agreed order evidences Care Center's
agreement to extend the section 74.351 report deadline. However, the agreed order in
McDaniel contained clauses that distinguish it from the one before us. See id. Specifically,
the McDaniel order directed that the order's deadlines were to take precedence over
conflicting deadlines set by rule or statute. Id. Further, the McDaniel order provided that
the parties were to begin discovery as soon as practicable, notwithstanding any limitations
found in chapter 74. Id. The McDaniel majority relied heavily on these two provisions to
reach the conclusion that the trial court's scheduling order extended section 74.351's expert
report deadline. See id. at 793-95. No similar provisions exist in the agreed order before us.

 We conclude that the trial court's agreed order is unambiguous, and therefore we
review the order de novo. See MCI Telecomms. Corp., 995 S.W.2d at 650-51. We further
conclude that nothing in the agreed order at issue suggests the parties intended to extend the
deadline for serving section 74.351's required expert report. See generally Nat'l Union Fire
Ins. Co., 907 S.W.2d at 520. We agree with Care Center's argument that the 120-day
deadline contained in section 74.351 was not extended by written agreement. 

 B. Did the filing of "new claims" in Betty's Second Amended Petition allow her
an additional 120 days to serve her expert report?


 Betty's estate also asserts that "each time a party adds a new claim, the 120-day
timetable begins to run anew." Because Betty attached expert reports to her second amended
petition, Betty's estate argues that her reports were timely served. Care Center responds that
the health care liability claims alleged in Betty's second amended petition are for the same
alleged injury asserted in Betty's first amended petition and concludes that Betty's second
amended petition does not assert a new claim. As a result, Care Center maintains that Betty
was required to serve it with her expert report within 120 days of the date she first named
Care Center as a defendant.

 First, we examine the statutory definition of a health care liability claim. Under the
statute, a "health care liability claim" is:

 [A] cause of action against a health care provider or physician
for treatment, lack of treatment, or other claimed departure from
accepted standards of medical care, or health care, or safety or
professional or administrative services directly related to health
care, which proximately results in injury to or death of a
claimant, whether the claimant's claim or cause of action sounds
in tort or contract.

 

Tex. Civ. Prac. & Rem. Code Ann. § 74.001(a)(13) (Vernon 2005). "Health care" is further
defined as "any act or treatment performed or furnished, or that should have been performed
or furnished, by any health care provider for, to, or on behalf of a patient during the patient's
medical care, treatment, or confinement." Id. § 74.001(a)(10).

 A court examines the underlying nature of the allegations when determining whether
a particular case presents a health care liability claim. Garland Cmty. Hosp. v. Rose, 156
S.W.3d 541, 543-44 (Tex. 2004). We are not bound by a party's characterization of a claim. 
See Theroux v. Vick, 163 S.W.3d 111, 114 (Tex. App.-San Antonio 2005, pet. denied). A
plaintiff cannot use artful pleading to avoid statutory requirements. Garland Cmty. Hosp.,
156 S.W.3d at 543. In applying these rules, this court has previously held that recasting a
claim does not trigger a new 120-day period under section 74.351 to allow additional time
to file the required expert report. See Empowerment Options, Inc. v. Easley, No. 09-06-148-CV, 2006 Tex. App. Lexis 9696, at *12 (Tex. App.-Beaumont Nov. 9, 2006, pet. denied)
(mem. op.). The Fourteenth Court of Appeals has taken a similar position regarding attempts
to recast claims to trigger a new expert report deadline. Mokkala v. Mead, 178 S.W.3d 66,
71, 76 (Tex. App-Houston [14th Dist.] 2005, pet. denied) (refusing to allow a plaintiff to
restart section 74.351's deadline for expert reports by nonsuiting the health care liability
claim and refiling it, as doing so would be inconsistent with the policies, goals, and 
provisions of statute).

 Betty's estate argues that Betty's second amended petition included "new claims" for
negligent hiring, negligent supervision and training, and negligence in failing to adhere to
an efficient plan of care. Nevertheless, Betty's estate acknowledges that the alleged "new
claims" arise "out of the same transaction or set of events" as Betty's original claim. The
statutory definition of "health care liability claim" is broad, in that it refers to a cause of
action that proximately results in the claimant's injury or death. Tex. Civ. Prac. & Rem.
Code Ann. §74.001(a)(13). Betty's original complaint against Care Center arises from Care
Center's movement or transfer of Betty in a way that allegedly caused her cervical spine
injuries, and the additional allegations do not assert any additional claimed injury.
Furthermore, each of Betty's new theories would require a showing of a negligent act or
omission by an employee of Care Center that resulted in Betty's injury. See generally
Diversicare Gen. Partner, Inc. v. Rubio, 185 S.W.3d 842, 849-50 (Tex. 2005) (health care
is provided to patients in health care facilities through the staff). Recasting these claims as
negligent hiring or supervision claims does not change the fact that Betty will have the
burden to prove that an employee of Care Center was negligent, and that Care Center's
employee proximately caused Betty's injury. See generally id. 

 Moreover, Betty's initial complaint is sufficiently broad to include the theories now
asserted as being "new." When Betty initially sued Care Center, she alleged that Care
Center's staff:

 1. Negligently failed to provide the professional care which
meets the standard care of an average qualified health
care provider;

 

 2. Negligently breached the duty to provide Mrs. Sutton
with appropriate care and services; 


 3. [Care Center] failed to employ proper transfer
techniques; and,


 4. [Care Center] failed to exercise caution in the transfer of
Betty Sutton.


These allegations are sufficiently broad to encompass the claims that Betty's estate now
asserts are "new." See generally NCED Mental Health, Inc. v. Kidd, 214 S.W.3d 28, 34-35
(Tex. App.-El Paso 2006, no pet.). 

 The fact that Betty's original allegations against Care Center were sufficiently broad
to encompass her "new" claims is one factor that distinguishes this case from Puls v.
Columbia Hospital at Medical City Dallas Subsidiary, L.P., 92 S.W.3d 613 (Tex.
App.-Dallas 2002, pet. denied). In Puls, the Dallas Court of Appeals held that the health
care claimant's assertion of claims against the hospital regarding negligent post-surgical
nursing care triggered a new report deadline from the earlier claims based on the hospital's
liability for the acts and omissions of a perfusionist. See id. The court in Puls found a report
criticizing the hospital's post-surgical nursing care timely when the claimant's earlier petition
alleged claims based upon an injury during surgery caused by the hospital's perfusionist. See
id. at 618-19. Because the appeals court viewed the post-surgical nursing claims as new
claims that were not encompassed by the claimant's original allegations, it calculated the
statutory report deadline from the date the claimant filed the petition complaining about the
hospital's nursing care. See id.

 Our conclusion that Betty's claims are not "new" is reinforced by Betty's own
interpretation of her claims. When Betty filed her second amended petition containing the
claims the estate now characterizes as "new," she did not attach a new expert report. Instead,
Betty attached the same expert reports to her second amended petition as she attached to her
original petition. If the claims were "new," they would require a report that addressed them. 
In Puls, unlike the case before us, the claimant filed a new report concerning the new claims. 
See id.

 In summary, based on the allegations made in the two relevant petitions at issue, we
conclude that section 74.351 required Betty to serve Care Center with an expert report within
120 days of filing her first amended petition. Since she did not, and because she asserted no
new claims in her second amended petition, she failed to comply with the requirements of
section 74.351.Conclusion

 Betty failed to timely file the report required by section 74.351. See Tex. Civ. Prac.
& Rem. Code. Ann. § 74.351(a). The legislature requires dismissal of claims of health care
liability claimants who do not comply with the statutory requirement. See id. § 74.351(b). 
Accordingly, the trial court was statutorily required to grant Care Center's motion to dismiss
with prejudice and to award Care Center its reasonable attorney's fees and court costs. See
id. We hold the trial court erred in denying Care Center's motion to dismiss. We sustain
Care Center's issue.

 To allow the trial court to comply with the legislature's mandate, we reverse the trial
court's order denying Care Center's motion to dismiss and remand the case to the trial court
to allow it to enter a judgment dismissing Betty's claims against Care Center with prejudice
and to award Care Center its reasonable attorney's fees and court costs.

 REVERSED AND REMANDED.


 ____________________________

 HOLLIS HORTON

 Justice



Submitted on February 14, 2008

Opinion Delivered April 17, 2008

Before McKeithen, C.J., Kreger and Horton, JJ.
1. The version of section 74.351(a) applicable to this suit required an expert report in
a health care liability claim to be served 120 days from the date "the claim" was filed. See
Act of June 2, 2003, 78th Leg., R.S., ch. 204, §§ 10.01, 10.09, 23.02(a), (d), 2003 Tex. Gen.
Laws 847, 864, 875, 884, 898-99, amended by Act of May 18, 2005, 79th Leg., R.S., ch. 635,
§ 1, 2005 Tex. Gen. Laws 1590, 1590 (current version at Tex. Civ. Prac. & Rem. Code
Ann. § 74.351 (Vernon Supp. 2007)). In 2005, the Legislature amended section 74.351(a)
to require a claimant to serve an expert report not later than the 120th day after the original
petition is filed. See Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 1, 2005 Tex. Gen.
Laws 1590, 1590 (current version at Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (Vernon
Supp. 2007)). The 2005 amendment, however, does not apply to causes of action that
accrued prior to the amendment's effective date. See Act of May 18, 2005, 79th Leg., R.S.,
ch. 635, § 2, 2005 Tex. Gen. Laws 1590, 1590 (providing that 2005 amendment of section
74.351(a) applies only to causes of action that accrued on or after amendment's effective date
of September 1, 2005). In this opinion, references to section 74.351(a) are to the 2003
version, which applies to health care liability claims at the time of Betty Sutton's alleged
injury in 2004. With respect to section 74.351(b), we cite the current version of the statute,
as there are no material changes in the amended statute.
2. In addition to Care Center, the First Amended Petition's additional defendants were
The Arboretum Group, Inc., Harvest Communities, Inc., and Priority One Ambulance
Service.