

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-14-00518-CV

Jeanne **COOK**,
Appellant

v.

Warren F. **NEELY**, M.D.,
Appellee

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2010-CI-10774
Honorable Michael E. Mery, Judge Presiding

Opinion by:     Karen Angelini, Justice

Sitting:     Karen Angelini, Justice
            Marialyn Barnard, Justice
            Rebeca C. Martinez, Justice

Delivered and Filed:  July 29, 2015

AFFIRMED

Jeanne Cook brought claims for health care liability and fraud against Warren F. Neely, M.D. The case was tried to a jury. The trial court granted a motion for directed verdict on the fraud claim, and the jury found against Cook on the health care liability claim. The trial court rendered a take-nothing judgment. On appeal, Cook argues (1) the trial court erred in directing verdict on her fraud claim, and (2) the trial court abused its discretion in excluding evidence. We affirm.

**BACKGROUND**

In December 2007, Cook began suffering from pain in her left hip, left leg, and lower back. In early April 2008, Cook sought medical care and treatment from Neely, who is a neurosurgeon. On April 15, 2008, Neely performed surgery on Cook. During the surgery, Neely removed a herniated disc in the lower region of Cook's spine and inserted two medical devices in place of the removed disc. The purpose of these medical devices was to stabilize Cook's spine by assuming the role of the removed disc. At the time, the medical devices were known as "OTC [Orthopedic Technology Company] bone plugs."

After the surgery, Neely continued to provide medical care to Cook. Over the next twenty months, Cook visited Neely's office several times. At each visit, Neely examined Cook and reviewed newly-taken x-rays of her lumbar region. Neely also told Cook that the bone plugs he had inserted during the surgery were in "excellent" or "good" position. At Cook's last office visit on January 15, 2010, Neely recommended that Cook undergo a second surgery to address problems in another part of her spine. In March 2010, Cook was examined by another surgeon, Dr. Steven Cyr, who advised Cook that the bone plugs that had been implanted by Neely were compressing her nerve roots. Cyr recommended that the bone plugs be surgically removed. Cook followed this recommendation and, in April 2010, the bone plugs that were previously implanted by Neely were surgically removed by Cyr.

On June 29, 2010, Cook filed suit against Neely, claiming that he committed medical negligence pursuant to Chapter 74 of the Texas Practice and Civil Remedies Code, the Texas Medical Liability Act ("TMLA"). In her petition, Cook alleged that Neely was "negligent in the healthcare treatment that he administered" to her. Among other things, Cook alleged in her petition that Neely failed to provide adequate treatment, failed to provide treatment in accordance with the standard of care, and failed to properly position the medical devices during her surgery. Cook later

amended her petition to add a fraud claim, in which she alleged that during the course of her post-operative care, Neely committed fraud either by falsely representing the "excellent" position of the bone plugs, or by failing to disclose that the bone plugs were improperly positioned. Cook further alleged that she relied upon Neely's misrepresentations to her detriment and was prevented from seeking corrective treatment for the improperly positioned bone plugs until 2010.

The case was tried to a jury. After Cook presented her evidence, Neely moved for directed verdict on the fraud claim, arguing that Cook's purported fraud claim was actually a healthcare liability claim.[1] Initially, the trial court denied the motion for directed verdict on the fraud claim. Ultimately, however, the trial court granted the motion and directed verdict on the fraud claim, stating, "I'm going to grant the directed verdict on fraud because the law does not permit me to submit that to the jury . . . [the fraud allegations] clearly come[] under the health care services." After the jury found against Cook on her health care liability claim, the trial court rendered a take-nothing judgment. This appeal followed.

---

[1]Counsel for Neely argued:

> [T]here's not a fraud cause of action that's allowed under these facts….
>
> What we have here is ongoing care provided by a physician over a period of two years in follow-up with his patient. Everything that they're alleging regarding the fraud . . . everything that they're contending is fraudulent is intertwined with the rendition of health care. He interpreted radiological studies, he assessed the patient, he performed physical examinations. In his judgment as a neurosurgeon, he determined that the [devices] were well positioned and they weren't the cause of her ongoing waxing and waning symptomatology.
>
> So you can't then [parcel] that out and say no—although all of their factual allegations are incorporated into their fraud claim in their petition, they incorporated them by reference, so every factual allegation supporting their negligence claim is incorporated by reference for their fraud claim. That's inherently intertwined in the rendition of health care.
>
> And what the Texas Supreme Court has held repeatedly is you can't splice what is a health care liability claim into separate causes of action.

**DIRECTED VERDICT**

In her first issue, Cook argues the trial court erred in granting a directed verdict as to her fraud claim. Neely counters that the trial court properly directed verdict as to the fraud claim because Texas law does not recognize a separate fraud cause of action against a physician when the essence of the claim relates to the rendition of health care.

*Standard of Review*

A directed verdict may be proper when the substantive law does not permit the plaintiff to recover on a cause of action. *Lively v. Adventist Health System/Sunbelt, Inc.*, No. 02-02-00418-CV, 2004 WL 1699913, at \*5 (Tex. App.—Fort Worth July 29, 2004, no pet.) (holding the trial court properly granted directed verdict based on the lack of a recognized cause of action for breach of implied warranty); *Arguelles v. U.T. Fam. Med. Ctr.*, 941 S.W.2d 255, 258 (Tex. App.—Corpus Christi 1996, no writ) (concluding directed verdict was properly granted because Texas does not recognize a "lost chance" claim in medical malpractice suit). When, as here, a ruling on a directed verdict involves a question of law, we review that aspect of the ruling under a de novo standard of review. *McCullough v. Scarbrough, Medlin & Assoc., Inc.*, 435 S.W.3d 871, 885 (Tex. App.—Dallas 2014, pet. denied).

*Applicable Law*

The TMLA defines the term "health care liability claim" as:

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13) (West Supp. 2014). This statutory definition contains three elements: (1) the defendant is a health care provider or physician; (2) the claimant's cause of action is for treatment, lack of treatment, or other claimed departure from accepted

standards of medical care, health care, or safety or professional or administrative services directly related to health care; and (3) the defendant's departure from accepted standards proximately caused the claimant's injury or death. *Loaisiga v. Cerda*, 379 S.W.3d 248, 255 (Tex. 2012).

The TMLA does not define the term "cause of action;" however, the generally accepted meaning of that phrase refers to the "fact or facts entitling one to institute and maintain an action, which must be alleged and proved in order to obtain relief." *Id*. The TMLA broadly defines "health care" as "any act . . . performed . . . by any health care provider for [or] to . . . a patient during the patient's medical care, treatment, or confinement." *Id*.; *see* TEX. CIV. PRAC. & REM. CODE § 74.001(a)(10). The TMLA defines "medical care" as "any act defined as practicing medicine under Section 151.002, Occupations Code, performed or furnished, or which should have been performed . . . for, to, or on behalf of a patient during the patient's care and treatment, or confinement." TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(19). The Occupations Code, in turn, defines "practicing medicine" as "the diagnosis, treatment, or offer to treat a mental or physical disease or disorder or a physical deformity or injury by any system or method, or the attempt to effect cures of those conditions by a person who . . . publicly professes to be a physician or surgeon." TEX. OCC. CODE ANN. § 151.002(a)(13) (West Supp. 2014). The TMLA creates a rebuttable presumption that a patient's claims against a physician based on facts implicating the defendant's conduct during the patient's care, treatment, or confinement, constitute health care liability claims. *Loaisiga*, 379 S.W.3d at 252.

The Texas Supreme Court has held that a plaintiff is not permitted to avoid the mandates of the TMLA by recasting a healthcare liability claim as some other cause of action. *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 853 (Tex. 2005) (holding patient's claim based on sexual assault by another patient caused by nursing home's negligence in failing to provide adequate supervision was a healthcare liability claim). "Our prior decisions are to the effect that if

the gravamen or essence of a cause of action is a health care liability claim, then allowing the claim to be split or spliced into a multitude of other causes of action with differing standards of care, damages, and procedures would contravene the Legislature's explicit requirements." *Yamada v. Friend*, 335 S.W.3d 192, 197 (Tex. 2010). "Application of the TMLA cannot be avoided by artfully pleading around it or splitting claims into both health care liability claims and other types of claims . . . ." *Id*. at 194. "Causes of action that are [health care liability claims] cannot be transmuted to avoid the strictures of the medical liability statute." *Texas West Oaks Hosp., LP, v. Williams*, 371 S.W.3d 171, 176 (Tex. 2012). Thus, when the underlying facts in an action are encompassed by the provisions of the TMLA with regard to a defendant, then all claims against that defendant based on those facts must be brought as health care liability claims. *See Turtle Healthcare Group, L.L.C. v. Linan*, 337 S.W.3d 865, 868-69 (Tex. 2011) (holding that ordinary negligence claims against a health care provider could not be maintained separate and apart from health care liability claims when all claims were based on the same underlying facts); *Yamada*, 335 S.W.3d at 193-94 (holding claims against a doctor arising from the same facts and pled both as ordinary negligence and health care liability had to be dismissed when the plaintiffs did not file an expert report as required by the TMLA).

Consistent with the decisions of the Texas Supreme Court, intermediate appellate courts, including this court, have held that plaintiffs may not avoid the requirements of the TMLA by recasting their causes of action as something other than health care liability claims. *Edwards v. Phillips*, No. 04-13-00725-CV, 2015 WL 1938873, at *9-10 (Tex. App.—San Antonio April 29, 2015, no pet.) (holding a plaintiff could not recast a healthcare liability claim as a due process claim); *Theroux v. Vick*, 163 S.W.3d 111, 114 (Tex. App.—San Antonio 2005, pet. denied) (holding the trial court correctly granted summary judgment on a fraud claim when the allegations were nothing more than an attempt to recast a medical negligence claim as a fraud claim). "An

intentional tort allegation does not take the claim out of the purview of chapter 74 when the underlying nature of the claim is inseparable from rendition of medical or health care services and involves a departure from accepted standards of medical and health care." *Saleh v. Hollinger*, 335 S.W.3d 368, 374 (Tex. App.—Dallas 2011, pet. denied). "A cause of action will be considered a health care liability claim if it is based on a breach of a standard of care applicable to health care providers." *Theroux*, 163 S.W.3d at 113. To determine whether a cause of action fits this definition, we look not only at the plaintiff's pleadings, but also at the underlying nature of the claim. *Id*. We are not bound by the form of the plaintiff's pleadings or her characterization of the claim. *Edwards*, 2015 WL 1938873, at *9. We examine whether the claim involves the diagnosis, care, or treatment of the patient, and whether expert medical or health care testimony would be required to prove or refute the merits of the claim. *Id.*; *Theroux*, 163 S.W.3d at 113-14.

*Analysis*

Here, Cook's pleadings contain the following factual allegations. In December 2007, Cook began suffering from severe pain in her left hip and left leg, along with pain in her lower back. When medical imaging revealed a large disc herniation compressing a nerve root, Cook sought medical care and treatment from Neely, and a physician-patient relationship was established. During the course of treatment, Neely performed surgery on Cook, which included disc removal and an interbody fusion utilizing OTI bone plugs. The surgery did not produce the desired results; it exacerbated Cook's symptoms and worsened her already fragile and painful condition. Neely was "negligent in the healthcare treatment that he administered" to her. In particular, Neely (1) failed to provide adequate treatment; (2) failed to provide treatment in accordance with the standard of care; (3) negligently performed surgery, including but not limited to, improper positioning of medical hardware/devices; (4) failed to recognize and/or respond to complications arising during surgery; and (5) implanted improper or contraindicated medical hardware/devices

in her. Thereafter, Cook's pleadings list two causes of action: negligence under the TMLA and fraud. As to the negligence claim, Cook's pleadings state that Neely was a health care provider and that he was negligent because he deviated from the standard of care in the community where he provides medical treatment, hospital care, and services. As to the fraud claim, Cook's pleadings incorporate by reference all of the previous statements made in her petition. Her pleadings then state that during the course of her post-operative care, Neely falsely represented the "excellent" position of the bone plugs or failed to disclose that the bone plugs were improperly positioned, and that she relied upon Neely's misrepresentations to her detriment.

In determining the underlying nature of Cook's purported fraud claim, we consider whether the substance of her claim involves the diagnosis, care, or treatment of a patient, and whether expert testimony would be required to prove or refute the merits of her claim. *See Edwards*, 2015 WL 1938873, at *9; *Theroux*, 163 S.W.3d at 113-14. Cook's pleadings show her purported fraud claim arose in the context of the post-operative care and treatment she received from a physician, Neely. As expressed in her pleadings and as presented at trial, this claim was based on allegations that the medical devices that Neely had surgically implanted in Cook were not properly positioned, that x-rays showed the improper positioning, and that Neely failed to advise Cook of the improper positioning or concealed the improper positioning by not showing her the x-rays that revealed the problem. The only way Cook could have established that the x-rays revealed the alleged improper positioning was through expert medical or health care testimony. And, in fact, at trial Cook did present expert medical or health care testimony about the improper positioning of the devices and how this was revealed in her post-operative x-rays.[2] Because the substance of Cook's purported

---

[2] Dr. Maxwell Boakye, a neurosurgeon, testified as follows: "I'm not a radiologist. So I speak just based on my experience in looking at images. And to my eyes it looks like the [devices inserted in Cook] [were] too far back into the canal and potentially more—very likely impinging on the nerve roots, particularly on the left side." Additionally, in referring to an x-ray of Cook taken approximately two weeks after her surgery, Dr. Boakye testified, "[T]his image,

fraud claim involved the diagnosis, care, or treatment of the patient, and expert medical or health care testimony was required to prove her allegations, her claim, at its core, was a healthcare liability claim. We, therefore, conclude the trial court correctly determined that Cook's purported fraud claim was inseparable from the rendition of medical or health care and could not be recast as a separate cause of action.

In her brief, Cook essentially argues that her purported fraud claim was independent of any health care liability claim because the facts that supported this claim arose post-operatively while the facts that supported her health care liability claim arose during the surgery. According to Cook, the trial court should not have directed verdict on her fraud claim because the "lies and deception occurred after the [] surgery" and thus constituted a "separate, independent tort" "distinct from the negligence committed during the initial surgery." We disagree. Again, when analyzing whether the claimant's cause of action is for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care, we focus on the facts underlying the claim. *Loaisiga*, 379 S.W.3d at 255. A claim based on one set of facts cannot be spliced or divided into both a health care liability claim and another type of claim. *Id.* Thus, "it follows that claims premised on facts that *could* support claims against a physician or health care provider for departures from accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care are health care liability claims, regardless of whether the plaintiff alleges the defendant is liable for breach of any of those standards." *Id.*

---

my first impression is the [devices] are beyond the—what we call the posterior body of the vertebra above and also potentially in the—what we call the neural foramen, you know. So I would suspect that they are maybe not in the best position and . . . begin to think about whether they are symptomatic or not."

Here, the facts supporting Cook's purported fraud claim involved treatment or lack of treatment by a physician. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13); *Loaisiga*, 379 S.W.3d at 255. Cook asserted that during multiple post-operative visits Neely examined her and advised her that the devices that he had surgically implanted in her spine were in the proper position. However, according to Cook and her medical expert, the devices were not in the proper position. Additionally, Cook's purported fraud claim was premised on facts that could support a claim against Neely for a departure from the accepted standards of medical or health care. *See Loaisiga*, 379 S.W.3d at 255. In fact, Cook's medical expert testified as to two primary breaches of the standards of care in this case. The first breach involved the initial placement of the devices during the surgery; the second breach involved the failure to address the improperly positioned devices during the post-surgical visits.[3] Given that Cook's purported fraud claim was inseparable from the rendition of medical or health care and involved a departure from accepted standards of medical or health care, the gravamen or the essence of the claim was a health care liability claim. For these reasons, the trial court correctly directed verdict as to Cook's fraud claim. We overrule Cook's first issue.

## EVIDENTIARY RULING

In her second issue, Cook argues the trial court abused its discretion in excluding evidence about Neely's ownership or financial interest in the medical devices used in her surgery, the OTI bone plugs. In response, Neely urges us to overrule this issue, arguing (1) any error was not preserved for appellate review because Cook failed to make an offer of proof, (2) the trial court

---

[3]Specifically, as to the latter breach, Dr. Boakye testified, "[I]t would be a deviation to have a malpositioned [device] in a patient that's continuing to have significant neurological pain and deficits. So . . . given her reported symptoms and the imaging showing likely compression of the nerve roots, it is a breach of the standard of care not to address that situation."

did not abuse its discretion in excluding the evidence, and (3) the exclusion of the evidence did not cause the rendition of an improper judgment.

We review a trial court's decision concerning the exclusion of evidence for an abuse of discretion. *McEwen v. Wal-Mart Stores, Inc.*, 975 S.W.2d 25, 27 (Tex. App.—San Antonio 1998, pet. denied). A trial court abuses its discretion if it acts without reference to any guiding rules or principles. *Id.* When a trial court abuses its discretion in excluding evidence, the party asserting the error has the burden to show that it probably caused the rendition of an improper judgment. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 812 (Tex. 2010); *see* TEX. R. APP. P. 44.1(a)(1). To show harm, the excluded evidence must be controlling on a material issue and not cumulative of other evidence. *Cortez v. HCCI-San Antonio, Inc.*, 131 S.W.3d 113, 119 (Tex. App.—San Antonio 2004), *aff'd*, 159 S.W.3d 87 (Tex. 2005). Error may not be predicated upon a ruling excluding evidence unless the substance of the evidence was made known to the court by an offer of proof or was apparent from the context. TEX. R. EVID. 103(a)(2); *In the Interest of R.G.*, 362 S.W.3d 118, 124 (Tex. App.—San Antonio 2011, pet. denied).

At trial, Cook sought to elicit testimony from Neely about his ownership or financial interest in the OTI bone plugs. Before Cook's surgery, Neely formed a company for the purpose of acquiring a financial or ownership interest in the OTI bone plugs. Neely later acquired a financial or ownership interest in the devices. However, at the time of Cook's surgery, Neely had no financial or ownership interest in the devices. In hearings outside the jury's presence, Cook argued that evidence of Neely's ownership or financial interest in the devices was relevant and admissible because it showed that Neely had a "motive to continue to insist upon the [devices]" "staying inside of [] Cook." On the other hand, Neely objected to the evidence, arguing it was

irrelevant and highly prejudicial in the context of this case. *See* TEX. R. EVID. 403.[4] The trial court performed a balancing test under Rule 403 of the Texas Rules of Evidence, sustained Neely's objection, and excluded the evidence.

Even if we were to assume that the trial court abused its discretion in excluding the evidence in question, and that the error was properly preserved for our review, we would still overrule this issue. Cook has the burden to show that any error in excluding the evidence probably caused the rendition of an improper judgment. *See Waffle House*, 313 S.W.3d at 812; *Cortez*, 131 S.W.3d at 119. However, Cook neither argues nor shows that the exclusion of the evidence in question probably caused the rendition of an improper judgment. Furthermore, based on our own review of the record, we cannot say that the exclusion of the evidence probably caused the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a)(1). We overrule Cook's second issue.

## CONCLUSION

The judgment of the trial court is affirmed.

Karen Angelini, Justice

---

[4]Rule 403 provides:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence.

TEX. R. EVID. 403.