NO. 07-99-0516-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JANUARY 3, 2001

______________________________

LINDA MARTINEZ, INDIVIDUALLY AND AS NEXT FRIEND OF

FRANK MARTINEZ, JR., A MINOR, AND AS REPRESENTATIVE

OF THE ESTATE OF FRANK MARTINEZ, SR., DECEASED AND 

MARGARET ANN MARTINEZ, APPELLANTS

V.

BATTELLE MEMORIAL INSTITUTE, MASON & HANGER CORPORATION,

DR. ARTHUR MORTON, CARL D. LANG, DR. KIM BAKER, R. D. LOOMAN,

 PAUL SOWA, JIM RACKSTRAW, MIKE PIKULA, DAVID MARTEL

 AND SABRINA CASEY, APPELLEES

_________________________________

FROM THE 181
ST
 DISTRICT COURT OF RANDALL COUNTY;

NO. 45,838-B; HONORABLE SAMUEL C. KISER, JUDGE

_______________________________

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

Linda Martinez, Individually and as Next Friend of Frank Martinez, Jr., and as Representative of the Estate of Frank Martinez, Sr., and Margaret Ann Martinez appeal from the dismissal of their suit against Battelle Memorial Institute, Dr. Arthur Morton, Dr. Kim Baker, and the Estate of Dr. Carl D. Lang, Deceased, because expert reports required by the Medical Liability and Insurance Improvement Act were not filed.  Appellants claim that (1) the trial court abused its discretion in failing to grant a 30-day extension for the filing of expert reports, and (2) part of their suit was based on allegations of ordinary negligence, and those claims should not have been dismissed even if their health care claims were properly dismissed.  We affirm.

I.  BACKGROUND

Linda Martinez, individually and on behalf of her husband’s estate and as next friend of Frank Martinez Jr., and Margaret Ann Martinez (appellants), sued Battelle Memorial Institute, Dr. Arthur Morton, Dr. Kim Baker, and the Estate of Dr. Carl D. Lang (appellees), and Mason & Hanger Corporation following the death of Frank Martinez, Sr. (Martinez).  The claims against Mason & Hanger were severed from the claims against appellees, and remain pending before the trial court.  

Martinez was employed by Mason & Hanger Corporation as a security officer.
  
Security officers were required to have an annual medical examination.  The medical examination was administered by Battelle, the operator of the Occupational Medicine Department (department) under a subcontract with Mason & Hanger.  Drs. Morton, Baker and Lang were employed by Battelle as Occupational Medicine Physicians in the department.
  
The security officers were also required to successfully complete an annual physical fitness test.  Prior to the physical fitness test, the security officers were required to obtain medical certification from the department verifying the security officer’s physical fitness to take the test.  

Martinez had an annual medical examination on November 28, 1995.  Following the examination, the department certified that he was fit to participate in the physical fitness test.  
On December 16, 1995, Martinez attempted his annual physical fitness test.  A fitness specialist administered the test.  During the final lap of the half-mile run, Martinez collapsed.  He was attended by emergency medical personnel, transferred to hospital facilities and placed on life support.  He never regained consciousness and died on December 23, 1995.

Appellants filed suit on December 16, 1997.  They claimed appellees were negligent and grossly negligent.  Additionally, appellants claimed in a separate section of their pleadings
(footnote: 1) that 

...the [appellee’s] acts and/or omissions constitute violations
(footnote: 2) of Article 4590i
(footnote: 3) in at least the following manner:

In failing to conduct a proper physical examination of the Decedent;

2.   In failing to properly interpret data and diagnose the Decedent’s physical condition;

3. In authorizing the Decedent to take the physical fitness test in question;

4.   In failing to warn the Decedent of the danger in participating  the physical fitness test in question;

5. In certifying that the Decedent was physically fit to participate in the physical fitness test in question.

Each and all of the above and foregoing acts, both of omission and commission, singularly or in combination with others, constituted negligence and/or gross negligence which proximately caused the occurrence made the basis of this suit, and the Plaintiffs’ injuries and damages plead [sic] herein.

Appellants did not provide expert reports as to the health care liability claims, and in July, 1999, appellees filed a motion to dismiss.  By their motion, appellees urged that appellants’ claims were predicated on alleged departures from accepted standards of medical care, and that the other allegations of negligence and gross negligence were an attempt to recast the health care claims to avoid the standards and requirements imposed by 
Tex. Rev. Civ. Stat. Ann
. art. 4590i, § 13.01(g) (Vernon Supp. 2000).
(footnote: 4) 

The trial judge set the Motion to Dismiss for hearing on September 10, 1999.  On the morning of the hearing, appellants filed a motion to extend time to file expert reports pursuant to Section 13.01(g).  By their motion, appellants claimed that they intended to prosecute their suit against appellees based on ordinary negligence and that ordinary negligence actions do not require expert reports to be filed.  Appellants asserted that if the trial court found their claims to be miscast health care liability claims, then the failure to file expert reports was not intentional or due to conscious indifference, but was based on the mistaken belief that appellants could proceed without expert reports.  The trial court granted appellees’ motion and dismissed all claims against appellees with prejudice to refiling.  
See
 Section 13.01(e)(3).  The dismissed claims were severed from the remainder of the action and this appeal ensued.  For the reasons set out hereinafter, we affirm.

II.  STANDARD OF REVIEW

We review the trial court's dismissal of the claims by the abuse of discretion standard.  
Knie v. Piskun
, 23 S.W.3d 455, 461 (Tex.App.–Amarillo 2000, pet. denied).  In applying this standard, we defer to the trial court's factual determinations but review questions of law 
de novo
.  
Id
.  A trial court abuses its discretion if it acts without reference to any guiding rules or principles, that is, if its action is arbitrary or unreasonable.  
Worford v. Stamper
, 801 S.W.2d 108, 109 (Tex. 1990).  

III.  APPELLANTS’ FIRST ISSUE: THE TRIAL COURT’S FAILURE TO GRANT EXTENSION OF TIME TO FILE EXPERT REPORTS

Appellants’ first issue claims that the trial court abused its discretion in failing to grant a 30-day extension of time for them to file the expert reports required by Section 13.01(d).  Appellants urge that their failure to file reports was because their theories of negligence did not encompass departures from accepted standards of medical care, but were based on breaches of ordinary care standards, and that they believed no expert reports were required.  Therefore, they conclude, the failure to file expert reports “was not intentional or the result of conscious indifference, but was, if anything, a mistake based on [the] belief that the alleged violations of Article 4590i sounded in ordinary negligence.”  Appellants rely on 
Horsley-Layman v. Angeles
, 968 S.W.2d 533, 536 (Tex.App.--Texarkana 1998, no pet.), for the proposition that some excuse, not necessarily a good excuse, is enough to justify an extension to file the expert reports.  In 
Horsley-Layman
, the plaintiffs sued several defendants, including two doctors.  An expert report was filed for only one doctor.  Dr. Angeles, the doctor as to whom no report was filed, moved to dismiss under Section 13.01(e).  The plaintiffs’ attorney asserted in a motion for an extension of time that the attorney believed Article 4590i had been substantially complied with by the providing of reports addressing one defendant doctor, and which were “impliedly critical” of Dr. Angeles.  Dr. Angeles did not controvert the plaintiffs’ allegations of mistaken belief that they had complied with the expert report requirement.  The motion to dismiss was granted by the trial court.  The appellate court held that the attorney’s belief was sufficient to show that the failure to file a report addressing the alleged negligence of Dr. Angeles was not the result of intentional conduct or conscious indifference, and, therefore, the trial court abused its discretion in not granting the extension.  
Id
. at 536-37.

Appellees respond that appellants’ decision to proceed with the case under the ordinary negligence theory was intentional and not the result of accident or mistake.  Appellees argue that the appellants’ fourth amended petition includes allegations that Article 4590i was violated, and appellants have not offered a reasonable explanation as to why they disregarded the statutory expert report filing requirements.

A plaintiff asserting a health care liability claim as defined by Article 4590i must follow certain procedural guidelines.  The plaintiff must either provide an expert report
(footnote: 5) addressing the claims made against each defendant physician or health care provider or nonsuit the claim against that physician or health care provider.  
See
 Section 13.01(d).  Generally, the report must be provided within 180 days of the filing of suit.  
Id
.  If a plaintiff fails to comply with section 13.01(d), the trial court shall, upon the motion of the affected physician or health care provider, dismiss the suit against that defendant with prejudice to the claim’s refiling.  
See
 Section 13.01(e)(3).  However, the statute provides for an exception to the 180-day deadline.  If the trial court finds that the plaintiff’s failure to comply with the 180-day deadline was not intentional or the result of conscious indifference, but was the result of an accident or mistake, the trial court shall grant the plaintiff a 30-day grace period to provide the expert reports.  
See
 Section 13.01(g).  The trial court’s decision whether to grant the extension is reviewed under an abuse of discretion standard.  
Knie
, 23 S.W.3d at 461; 
Nguyen v. Kim
, 3 S.W.3d 146, 151 (Tex.App.--Houston [14
th
 Dist.] 1999, no pet.).  Article 4590i does not define “intentional” or “conscious indifference.”  As used in the statute, the terms have been held
(footnote: 6) to derive from: (1) 
Tex. R. Civ. P
. 165a(3),
(footnote: 7) governing reinstatement of a case after dismissal for want of prosecution, and (2) the rule established in 
Craddock v. Sunshine Bus Lines
, 134 Tex. 388, 133 S.W.2d 124 (1939),
(footnote: 8) relating to granting a new trial after a default judgment.  In determining whether there was intentional disregard or conscious indifference, the trial court must look to the knowledge and acts of the appellants.  
See
 
Strackbein v. Prewitt
, 671 S.W.2d 37, 39 (Tex. 1984).  Proof of adequate justification for failing to comply with a deadline negates intent or conscious indifference.  
See
 
Smith v. Babcock & Wilcox Constr. Co.
, 913 S.W.2d 467, 468 (Tex. 1995). 

In this instance, appellants recognized that Article 4590i applied to at least some of their claims.  Their fourth amended petition alleged that certain specified acts and omissions, which we have set out previously, “constitute violations of Article 4590i.”  Those acts and omissions were alleged to constitute “negligence and/or gross negligence which proximately caused the occurrence made the basis of this suit, and the Plaintiffs’ injuries and damages plead [sic] herein.”  In their motion for an extension of time to file expert reports, appellants stated that they believed their suit was based upon ordinary negligence, yet further stated, “[t]his belief may or may not be mistaken . . . .”  Appellants’ attorney’s explanation at the hearing on the motion to dismiss was in the same vein.  

Appellants did not attempt to comply with the statutory requirements and fail to do so, as was done by the litigants in 
Horsley-Layman
, on which appellants rely.  Nor did appellants assert, even at the dismissal hearing, that they had an expert report in the offing. The record supports a conclusion that (1) appellants knew at least some of their claims fell under Article 4590i, (2) they chose not to comply with the statutory requirements, to the extent their claims were subject to the statute, and (3) their failure to file expert reports was intentional.  The trial court did not abuse its discretion by refusing to grant the appellants a 30-day extension to provide the required expert reports mandated by Section 13.01.  Appellants’ first issue is overruled.

IV.  APPELLANTS’ SECOND ISSUE:  DISMISSAL OF CLAIMS 

ALLEGED TO BE “ORDINARY NEGLIGENCE” CLAIMS

By their second issue, appellants contend that the trial court improperly dismissed their suit against appellees in its entirety because Section 13.01(d) does not apply to causes of action based on “ordinary” negligence,
(footnote: 9) which they pled as an alternative to the allegations that certain of their claims were subject to Article 4590i.  Appellants assert that their claims related to the implementation and enforcement of communication policies, rules and procedures, and that such claims do not require expert witness evidence.
(footnote: 10)  

Appellees’ response is that all of appellants’ claims related to appellees’ diagnosis or care of Martinez, thus requiring proof of standards of care for diagnosis and care by a medical expert with appropriate training, knowledge and expertise.  Appellees argue that appellants cannot avoid the procedures and provisions of Article 4590i by merely describing or classifying their claims as ordinary negligence claims.

In their fourth amended petition, appellants alleged that appellees were negligent in the following particulars: 

1) In failing to operate and maintain the medical department involved in performing a physical examination of the Decedent in a reasonably safe manner;

In failing to correct deficiencies within the medical department in question;

3 & 4) In failing to implement and enforce proper communication policies, rules and procedures to operate the medical department involved in performing a physical examination of the Decedent in a reasonably safe manner;

In failing to warn the Decedent of the danger of participating in the physical fitness test in question;

In failing to properly evaluate the Decedent’s physical condition prior to authorizing him to participate in the physical fitness test in question;

7 & 8) In failing to implement and enforce proper policies, rules and/or procedures to operate the medical department involved in performing a physical examination of the Decedent in a reasonably safe manner;

In failing to properly train agents, servants and/or employees to properly operate and maintain the medical department in question;

In certifying that the Decedent was physically fit to participate in the physical fitness testing in question;

In authorizing the Decedent to take the physical fitness test in question;

In failing to reasonably exercise its right to control subcontractors; and

13-16) In failing to implement and enforce proper safety policies, guidelines, rules and/or procedures for conducting occupational health exams and authorizing individuals to take the physical fitness test in question.

A “health care liability claim” as the term is used in Article 4590i is a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care or health care or safety which proximately results in injury to or death of the patient, whether the patient’s claim or cause of action sounds in tort or contract.  Section 1.03(a)(4).  In determining whether appellants’ claims allege violations of “standards of medical care or health care or safety” we necessarily examine the specific allegations made by appellants.  
See
 
MacGregor Medical Ass’n. v. Campbell
, 985 S.W.2d 38, 40-1 (Tex. 1998).  Whether acts and omissions alleged as the basis of liability are health care liability claims, and thus subject to the provisions of Article 4590i, depends on the underlying nature of the claims.  
See
 
Gormley v. Stover
, 907 S.W.2d 448, 450 (Tex. 1995); 
Sorokolit v. Rhodes
, 889 S.W.2d 239, 242 (Tex. 1994).  

Appellants contend that the reasoning expressed in 
Rogers v. Crossroads Nursing Serv., Inc.
, 13 S.W.3d 417 (Tex.App.--Corpus Christi 1999, no pet.) applies to them, and that their allegations do not fall under Article 4590i.  In 
Rogers
, the plaintiff sued a home health care company for placing a heavy supply bag near him, which fell and re-injured his back.  The claims were based on common law negligence.  The defendant claimed that the suit was a health care liability claim under Article 4590i  because the allegedly negligent placement of the supply bag amounted to a claim of departure from accepted standards of safety.  The trial court dismissed the suit because the plaintiff did not provide timely expert reports under Section 13.01.  On appeal, the plaintiff claimed that his suit was not governed by Article 4590i, and the appellate court agreed.  The court reasoned that:

[T]he question of how to place a heavy supply bag in a patient’s home so as not to injure the patient is not governed by an accepted standard of safety within the health care industry, but rather is governed by the standard of ordinary care, we find that Rogers’ cause of action is not a health care liability claim but is one for common law negligence.  
Id
. at 419.

The court also noted that the proper placement of a heavy bag does not require expertise in the medical or health care fields.  
Id
. at 420. 

In the matter before us, appellants’ allegations numbers 1, 2, 3 & 4, 7 & 8 and 9, which we have set out above, are directed to how a medical department is organized, operated and maintained.  The standards of care for such matters are not within the realm of knowledge of an ordinary juror.  Setting appropriate standards for the measuring of conduct as to such matters requires testimony of persons knowledgeable in the health care field, or other evidence of similar import.  
See
 
Denton Regional Medical Center v. LaCroix
, 947 S.W.2d 941, 950 (Tex.App.--Fort Worth 1997, writ denied, dism’d by agr.) (test for determining whether a hospital has a duty of care and whether that duty has been breached is what an ordinary hospital would have done under the same or similar circumstances); Comm. on Pattern Jury Charges, State Bar of Tex., Texas Pattern Jury Charges PJC 50.2, 51.3 (2nd Ed. 1998).  The allegations thus present health care liability claims. 

Appellants’ allegations numbered 5, 6, 10, 11 and 13-16 directly question (1) whether appellees had appropriate procedures for the evaluation of, and properly medically evaluated the physical condition of, Martinez, and (2) the medical judgments appellees made following evaluation of Martinez.  Such matters cannot be measured by the common knowledge of a lay juror.  Recovery on the allegations would require proof of the proper medical standard of care, the breach of that standard, and damages proximately caused by the breach.  
See
 
Hood v. Phillips
, 554 S.W.2d 160, 164-66 (Tex. 1977).  The conduct complained of is an inseparable part of appellees’ rendition of medical services and medical judgments based on those services.  As such, the claims are health care liability claims within the meaning of Article 4590i.  
See
 
Walden v. Jeffery
, 907 S.W.2d 446, 448 (Tex. 1995). 

Allegation number 12, the remaining claim that appellees’ efforts were not proper, must be read in connection with the underlying assertion that Martinez should not have been permitted to take the physical fitness test.  The allegation that appellees failed to reasonably exercise a right to control subcontractors to prevent Martinez from taking the test clearly is founded on appellants’ claim that a proper physical examination of Martinez and proper medical evaluation of his fitness to take the test would have resulted in appellees’ requiring the administrators of the test to preclude Martinez’ participation in the test.  Thus, allegation 12 depends upon and is also inseparable from claims addressing the conduct of physical examinations and medical judgments derived from those examinations.  Allegation 12, therefore, as to this record, is a health care liability claim.  Section 1.03(a)(4).  

The trial court did not err in determining that appellants’ claims of common law, or ordinary, negligence were miscast allegations of health care liability claims, and in dismissing the claims because no expert reports were filed as required by Article 4590i.  Appellants’ second issue is overruled.

The judgment of the trial court is affirmed.  
Tex. R. App.
 43.2(a).

Phil Johnson

   Justice

Publish.

FOOTNOTES
1:
At the time of the hearing on appellees’ motion to dismiss, appellants’ live pleading was their Fourth Amended Petition.

2:
Appellants did not urge in the trial court and have not urged in this court that 
Tex. Rev. Civ. Stat. Ann
. art. 4590i (Vernon Supp. 2000) created a new or independent cause of action so that a violation of the statute can occur by actions of a health care provider, although the pleadings refer to “violations of Article 4590i.” 

3:
Tex. Rev. Civ. Stat. Ann
. art. 4590i (Vernon Supp. 2000). 

4:
Further references to particular sections of Article 4590i will be referred to as “Section _.”

5:
Section 13.01(r)(6) defines “expert report.”

6:
See
 
Knie
, 23 S.W.3d at 462-65; 
Nguyen
, 3 S.W.3d at 151-52
; 
Presbyterian Healthcare Sys. v. Afangideh
, 993 S.W.2d 319, 322-23 (Tex.App.--Eastland 1999, pet. denied); 
Broom v. MacMaster
, 992 S.W.2d 659, 663 (Tex.App.--Dallas 1999, no pet.); 
Roberts v. Medical City Dallas Hosp., Inc.
, 988 S.W.2d 398, 403 (Tex.App.--Texarkana 1999, pet. denied); 
Horsley-Layman
, 968 S.W.2d at 536; 
McClure v. Landis
, 959 S.W.2d 679, 681 (Tex.App.--Austin 1997, pet. denied).

7:
Rule 165a(3) provides in part:

The court shall reinstate the case upon finding after a hearing that the failure of the party or his attorney was not intentional or the result of conscious indifference but was due to an accident or mistake or that the failure has been otherwise reasonably explained.

8:
In determining whether to grant a new trial after the court enters a default judgment, the following rule was announced in 
Craddock
:

A default judgment should be set aside and a new trial ordered in any case in which the failure of the defendant to answer before judgment was not intentional, or the result of conscious indifference on his part, but was due to a mistake or an accident . . . .  
Craddock
, 133 S.W.2d at 126.

9:
Appellants also contend that the ordinary negligence claims are not governed by Article 4590i because no doctor-patient relationship existed between appellees and Martinez.  
See
 
St. John v. Pope
, 901 S.W.2d 420, 424 (Tex. 1995); Section 1.03(a)(6).  Appellants did not present this argument to the trial court, and we do not consider it on appeal.  
See
 
Tex. R. App. P
. 33.1(a).

10:
The Accident Investigation Report prepared by Mason & Hanger concluded that communication procedures needed to be implemented between the department and the fitness specialists conducting the physical fitness tests.