Walid SALEH and the Sher Institute
for Reproductive Medicine Dallas,
P.A., Appellants

v.

Toni HOLLINGER and George
Hollinger, Appellees.

No. 05–10–00339–CV.

Court of Appeals of Texas,
Dallas.

Jan. 4, 2011.

Rehearing Overruled Feb. 7, 2011.

Wendy H. Hermes, B. Bowen Berry,
Deborah B. Junek, Rebecca Asheley Veit-

enheimer and Merritt B. Quigley, The Berry Firm, P.L.L.C., Dallas, TX, for Appellants.

Randall D. Wilkins, The Hennessy Law Firm, Willie D. Powells III, Attorney at Law, Houston, TX, for Appellees.

Before Justices FITZGERALD, MURPHY, and FILLMORE.

## OPINION

Opinion By Justice FILLMORE.

Appellants Walid Saleh, M.D. (Dr. Saleh) and The Sher Institute for Reproductive Medicine Dallas, P.A. (Sher Institute) bring this interlocutory appeal challenging the trial court's order denying their motion to dismiss the alleged health care liability claims of appellees Toni and George Hollinger.[1] Concluding we lack jurisdiction over the appeal of George Hollinger's claims, we dismiss the appeal as to him. Because we conclude Toni Hollinger's claims are health care liability claims subject to section 74.351 of the civil practice and remedies code and she failed to provide an expert report as required by section 74.351, we resolve the sole issue raised by Dr. Saleh and Sher Institute in their favor. We reverse the trial court's order as to Toni Hollinger's claims and remand to the trial court for the limited purposes of determining the reasonable attorney's fees and costs of Dr. Saleh and Sher Institute and for entry of an order dismissing with prejudice Toni Hollinger's claims against Dr. Saleh and Sher Institute.

### George Hollinger's Claims Against Dr. Saleh and Sher Institute

■ After reviewing the record, this Court questioned its jurisdiction over the interlocutory appeal of the denial of Dr. Saleh and Sher Institute's motion to dismiss George Hollinger's claims. The parties filed supplemental briefs on this issue.

■ An appellate court is obligated to review *sua sponte* issues affecting its jurisdiction. *See M.O. Dental Lab v. Rape,* 139 S.W.3d 671, 673 (Tex.2004); *OAIC Commercial Assets, L.L.C. v. Stonegate Vill., L.P.,* 234 S.W.3d 726, 735 (Tex.App.-Dallas 2007, pet. denied). Appellate jurisdiction is never presumed. *Brashear v. Victoria Gardens of McKinney, L.L.C.,* 302 S.W.3d 542, 546 (Tex.App.-Dallas 2009, no pet.) (op. on reh'g). An appellate court reviews de novo whether it has jurisdiction over an appeal because jurisdiction is a legal question. *See Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998); *OAIC,* 234 S.W.3d at 735. If the record does not affirmatively demonstrate the appellate court's jurisdiction, the appeal must be dismissed. *See IFS Sec. Group, Inc. v. Am. Equity Ins. Co.,* 175 S.W.3d 560, 562 (Tex.App.-Dallas 2005, no pet.).

■ If a trial court has not entered a final and appealable order, we have jurisdiction to hear an interlocutory appeal only if authorized by statute. *Stary v. DeBord,* 967 S.W.2d 352, 352–53 (Tex.1998). Our jurisdiction over interlocutory appeals is a narrow exception to the general rule that we may only consider final judgments and orders. *See Bally Total Fitness Corp. v. Jackson,* 53 S.W.3d 352, 355 (Tex.2001). Section 51.014(a)(9) of the civil practice

---

1. The notice of appeal in this matter purported to be on behalf of Dr. Saleh, Sher Institute, and Fredia Simmons. However, the motion to dismiss that is the subject of the trial court's order in this appeal was filed only as to claims asserted against Dr. Saleh and Sher Institute. Fredia Simmons subsequently filed a motion to dismiss in the trial court, and the denial of her motion to dismiss is the subject of a separate interlocutory appeal before this Court, *Fredia Simmons v. Toni and George Hollinger,* No. 05–10–01063–CV.

and remedies code provides that an interlocutory appeal may be taken from a trial court's denial of a motion to dismiss for failure to file an expert report under section 74.351(b) the civil practice and remedies code. TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(9) (West 2008).

The parties acknowledge that Dr. Saleh and Sher Institute's motion to dismiss addressed only Toni Hollinger's claims. Dr. Saleh and Sher Institute assert that because the parties referenced George Hollinger's claims during the hearing of the motion to dismiss, George Hollinger's claims were tried by consent. Although Toni and George Hollinger disagree with that assertion, they advised this Court that they were "willing to have this Court rule on those issues in the interest of judicial economy."

Neither position is tenable. Subject matter jurisdiction cannot be conferred or taken away by consent or waiver. *Walls Reg'l Hosp. v. Altaras,* 903 S.W.2d 36, 41 (Tex.App.-Waco 1994, no writ).

Dr. Saleh and Sher Institute's February 1, 2010 motion to dismiss pursuant to chapter 74 of the civil practice and remedies code referenced only Toni Hollinger's claims. Further, the trial court's March 1, 2010 order denying Dr. Saleh and Sher Institute's motion references only a claim stemming from the "transfer and sale of [Toni Hollinger's] eggs." We lack jurisdiction over this interlocutory appeal of George Hollinger's claims against Dr. Saleh and Sher Institute. Accordingly, we dismiss the appeal as to George Hollinger for lack of jurisdiction. *See* TEX.R.APP. P. 42.3(a).

### Toni Hollinger's Claims Against Dr. Saleh and Sher Institute

*Background*

On October 1, 2009, Toni Hollinger filed her original petition in district court against Dr. Saleh and Sher Institute, a fertility clinic, stemming from an assisted reproduction, or in vitro fertilization, performed by Dr. Saleh at Sher Institute. Toni Hollinger alleged:

> On or about October 5, 2007, the Plaintiff, TONI HOLLINGER went to see the Defendant(s) to have the surgical, in vitro fertilization procedure to be done. The Defendant, wrongfully, intentionally, with utter disregard and gross negligence stole her eggs, made misrepresentation to the Plaintiff, and sold the eggs to another person for profit. . . .

> The occurrence made the basis of this suit, referred to in this petition, and the Plaintiff's resulting injuries and damages were proximately caused, aggravated or accelerated by the negligent conduct of the Defendant,, [sic] who at all material times was acting within the course and scope of their [sic] employment for Defendant, [sic].

> Each of the before mentioned acts and/or omissions, singularly or in combination with others, constituted negligence or negligence per se that proximately caused the occurrence made the basis of this action and Plaintiffs' [sic] injuries and damages.

After Toni Hollinger's original petition was filed in district court, a petition was filed in county court by Toni and George Hollinger against Dr. Saleh and Sher Institute. The county court petition alleged Toni Hollinger suffered damages as a result of Dr. Saleh and Sher Institute's fraudulent representations, conversion, and negligent misrepresentations. The petition contained the following assertions as to Toni Hollinger:

> Plaintiff began consulting with Defendants for the purpose of beginning in vitro fertilization. . . . Plaintiff, Toni Hol-

linger began to take medications which Defendants' [sic] instructed her to take....

On or about October 5, 2007, Plaintiff, Toni Hollinger, went into Sher Institute for Reproductive Medicine Dallas, LLP to undergo Egg Retrieval. During this procedure Walid Saleh stated to Plaintiff that she had four eggs, however, the following day Walid Saleh contacted Plaintiff and told her she had seven eggs and that three embryos were fertilized. On or about October 10, 2007, Defendants told Plaintiffs that none of the embryos were fertilized. Defendants did not provide Plaintiffs with explanations for the failed fertilization, but stated possibly the birth control and/or Plaintiff's age were contributing factors. Defendants did not provide Plaintiffs with accurate information regarding their fertility treatment, and when Plaintiffs requested their medical records, they were given the [sic] another patient's records. No accounting was ever provided for the missing eggs.

The county court lawsuit was consolidated with the first-filed district court lawsuit.

More than 120 days after Toni Hollinger filed her original petition, Dr. Saleh and Sher Institute moved to dismiss Toni Hollinger's claims against them. Pursuant to chapter 74 of the civil practice and remedies code, Dr. Saleh and Sher Institute contended Toni Hollinger's allegations are health care liability claims requiring an expert report. They asserted Toni Hollinger's allegations were that Dr. Saleh committed professional negligence and misrepresentation by not providing certain information pertaining to her care, treatment or medical evaluation and Dr. Saleh stole her eggs and sold them to another.

In advance of the hearing on Dr. Saleh and Sher Institute's motion to dismiss, Toni and George Hollinger filed their first amended petition. Toni Hollinger's allegations in her first amended petition against Dr. Saleh and Sher Institute are identical to her original pleading filed in district court. She alleges her eggs were stolen and sold to another, misrepresentations were made to her, and the negligent acts or omissions proximately caused her injuries.

The trial court denied Dr. Saleh and Sher Institute's motion to dismiss. Dr. Saleh and Sher Institute brought this interlocutory appeal challenging the trial court's denial of their motion to dismiss.

*Standard of Review and Applicable Law*

We review a trial court's order on a motion to dismiss a health care liability claim for abuse of discretion. *Am. Transitional Care Ctrs. of Tex. v. Palacios,* 46 S.W.3d 873, 875 (Tex.2001) (applying abuse of discretion standard under predecessor statute, section 13.01(e) of article 4590i); *Nexion Health at Terrell Manor v. Taylor,* 294 S.W.3d 787, 791 (Tex.App.-Dallas 2009, no pet.). A trial court has no discretion in determining what the law is or in applying the law to the facts. *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992) (orig. proceeding). An abuse of discretion occurs if the trial court clearly fails to analyze or apply the law correctly. *Id.*

When the resolution of an issue requires the interpretation of a statute, the reviewing court applies a de novo standard of review. *Vanderwerff v. Beathard,* 239 S.W.3d 406, 408 (Tex.App.-Dallas 2007, no pet.). Whether a claim is a health care liability claim is a question of law. *Lee v. Boothe,* 235 S.W.3d 448, 451 (Tex.App.-Dallas 2007, pet. denied). Therefore, we review de novo the determination of whether a claim is a health care liability claim for the purpose of applying chapter 74 of the civil practice and remedies code. *Boothe v. Dixon,* 180 S.W.3d 915, 919 (Tex.App.-Dallas 2005, no pet.).

Under section 74.351 of the civil practice and remedies code, any person who brings suit asserting a health care liability claim must, within 120 days of filing the original petition, provide an expert report relating to each physician or health care provider against whom a claim is asserted. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (West Supp. 2010). If a required expert report has not been served by the 120–day deadline, on proper motion by the defendant the trial court shall dismiss the action with prejudice. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b).

 The expert report requirements of section 74.351(b) apply to all claims, re-- gardless of whether they are tort claims, that are encompassed within the following statutory definition of a "health care liability claim":

a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(a)(13) (West 2005). Under this definition, a health care liability claim consists of three elements: (1) a physician or a health care provider must be the defendant; (2) the suit must relate to the patient's treatment, lack of treatment, or some other departure from accepted standards of medical care, health care, or safety, or professional or administrative ser-

vices directly related to health care; and (3) the defendant's act, omission or other departure must proximately cause the claimant's injury or death.

The dispute here is over the second element. The question is whether Toni Hollinger's claims involve a departure from accepted standards of medical care by Dr. Saleh or health care by Sher Institute. "Medical care" is defined as:

any act defined as practicing medicine under Section 151.002, Occupations Code, performed or furnished, or which should have been performed, by one licensed to practice medicine in this state for, to, or on behalf of a patient during the patient's care, treatment, or confinement.

TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(a)(19).[2] "Health care" is defined as:

any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement.

TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(a)(10).

 To ascertain whether a cause of action is encompassed within the statutory definition of a health care liability claim, we look to the underlying nature of the claims and allegations to determine the gravamen of the complaint, and we are not bound by the form of the pleading or how complaints are labeled. *See Diversicare Gen. Partner, Inc. v. Rubio,* 185 S.W.3d 842, 851 (Tex.2005) (we focus on essence of

---

**2.** "Practicing medicine" means:

the diagnosis, treatment, or offer to treat a mental or physical disease or disorder or a physical deformity or injury by any system or method, or the attempt to effect cures of those conditions, by a person who:

(A) publicly professes to be a physician or surgeon; or
(B) directly or indirectly charges money or other compensation for those services.

TEX. OCC.CODE ANN. § 151.002(a)(13) (West Supp. 2010).

claim and consider alleged wrongful conduct and duties allegedly breached in determining whether claim is health care liability claim); *Dixon*, 180 S.W.3d at 919. A health care liability claim cannot be recast as another cause of action in an attempt to avoid the expert report requirement, and artful pleading cannot avoid the requirements of section 74.351 when the essence of the suit is a health care liability claim. *Diversicare*, 185 S.W.3d at 851; *Garland Cmty. Hosp. v. Rose*, 156 S.W.3d 541, 543 (Tex.2004).

A claim is a health care liability claim if it alleges a breach of accepted standards of medical care or health care or if the claim is inseparable from the rendition of medical care or health care. *See Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 664 (Tex.2010) (plurality op.); *Diversicare*, 185 S.W.3d at 848. In determining whether a claim is inseparable from the rendition of medical care, we consider factors such as whether a specialized standard in the health care community applies to the alleged circumstances and whether the alleged negligent act involves medical judgment related to the patient's care or treatment. *See Diversicare*, 185 S.W.3d at 847–52. The necessity of expert testimony from a medical professional to prove a cause of action may be an important factor in determining whether a cause of action is an inseparable part of the rendition of medical services. *Diversicare*, 185 S.W.3d at 848; *see also Inst. for Women's Health, P.L.L.C. v. Imad*, No. 04–05–00555–CV, 2006 WL 334013, at *3 (Tex. App.-San Antonio Feb. 15, 2006, no pet.) (mem. op.) (expert testimony necessary to establish applicable standard of care when alleged negligence is not within experience of layman).

*Analysis*

In response to Dr. Saleh and Sher Institute's motion to dismiss and on appeal, Toni Hollinger makes clear she does not complain about the medical procedures performed in connection with the harvesting of eggs and the insemination process. She asserts that her claims against Dr. Saleh and Sher Institute stem from the alleged sale of her eggs and are not health care liability claims. While acknowledging that her pleading against Dr. Saleh and Sher Institute claims negligent acts or omissions, she asserts that the acts from which her damages arose were fraud and deception by intentional misrepresentation and theft of her eggs. She argues that an unlawful act of theft cannot be deemed part of a patient's medical or health care, and no accepted standard of medical or health care includes theft. Therefore, she asserts her claims are not health care liability claims requiring an expert report under chapter 74.

Allegations of intentional acts of misrepresentation and theft are not dispositive as to whether Toni Hollinger's claims are health care liability claims. In determining whether a particular case presents a health care liability claim, we are not bound by the party's characterization of its claim. *Theroux v. Vick*, 163 S.W.3d 111, 113 (Tex.App.-San Antonio 2005, pet. denied). An intentional tort allegation does not take the claim out of the purview of chapter 74 when the underlying nature of the claim is inseparable from rendition of medical or health care services and involves a departure from accepted standards of medical and health care. *See Dixon*, 180 S.W.3d at 919–20 (allegation of knowing misrepresentation not determinative when analyzing underlying nature of claim); *Swanner v. Bowman*, No. 05–02–00040–CV, 2002 WL 31478769, at *3–4 (Tex.App.-Dallas Nov. 7, 2002, pet. denied) (not designated for publication) (claims against physician for intentional wrongful

death, intentional infliction of emotional distress, and civil conspiracy and against hospital for employees' conspiracy to conceal information were health care liability claims).

Like the holding in *Institute for Women's Health, P.L.L.C. v. Imad,* we conclude Toni Hollinger is alleging health care liability claims against Dr. Saleh and Sher Institute. In *Imad,* a couple went to a fertility clinic and underwent in vitro fertilization, which resulted in the birth of a healthy son. *Imad,* 2006 WL 334013, at *1. However, the couple brought suit against the clinic, alleging that on the day before the successful implantation, the embryologist employee of the clinic negligently dropped a tray containing nine embryos, destroying all but one. *Id.* The couple sought damages for negligence and bailment. *Id.* The clinic filed a motion to dismiss, arguing the plaintiffs had failed to file the expert report required in connection with a health care liability claim. *Id.* The couple claimed that because they were alleging common law negligence governed by a "reasonable prudent person" standard, no expert report was required. *Id.* at *3. The court of appeals disagreed:

> The very purpose of Mrs. Imad's treatment was the fertilization and implanting of the embryos to become pregnant. The acts and omissions of [the fertility clinic] run by physicians, in employing, training, and supervising an embryologist, and in establishing policies and procedures regarding the handling, storage, and transport of embryos, are an inseparable part of the rendition of the health care services to the Imads and are beyond the experience of an ordinary person.

*Id.* The court concluded the couple's allegation of negligence necessarily involved the health care provided the couple by the fertility clinic, and specialized knowledge of health care beyond a juror's ordinary understanding or experience was "clearly necessary." *Id.* The court of appeals reversed the trial court's order denying the clinic's motion to dismiss. *Id.*[3]

The very purpose of Toni Hollinger's treatment was fertilization and the implanting of embryos. As in *Institute for Women's Health, P.L.L.C. v. Imad,* the acts and omissions of Dr. Saleh and Sher Institute concerning the handling and disposition of eggs was an inseparable part of the rendition of medical and health care services. Further, artificial reproductive technology such as in vitro fertilization involves specialized knowledge beyond a layman's common experience or understanding. A layman does not have knowledge about the fertilization procedures involved in Toni Hollinger's care and treatment, including handling and disposition of and accounting for eggs and embryos. Moreover, Toni Hollinger's claims of negligence are based on the breach of the standard of care applicable to a physician and health care provider. The claims involve the duties owed to the patient and what a prudent physician or health care provider would do under the same or similar circumstances. Determining the appropriate standard of care for the evaluation of the claimed negligent conduct in this matter requires testimony of a person or persons knowledgeable in this specialized health care field. *See Martinez v. Battelle Mem'l Inst.,* 41 S.W.3d 685, 692 (Tex.App.-Amarillo 2001, no pet.).

---

3. See *Yamada v. Friend,* 335 S.W.3d 192, 196-97 (Tex.2010) (citing *Imad,* 2006 WL 334013) (explaining that where a claim is a health care liability claim covered by chapter 74, the claim based on the same facts cannot alternatively be maintained as an ordinary negligence claim for which no expert report is required under chapter 74).

We conclude that Toni Hollinger's claims against Dr. Saleh and Sher Institute arise from the rendition of health care and medical care as defined by sections 74.001(a)(10) and 74.001(a)(19), respectively. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 74.001(a)(10), (19). Further, her claims fall within the definition of a "health care liability claim" found at section 74.001(a)(13) and are subject to the expert report requirement of section 74.351(b). *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 74.001(a)(13), 74.351(b). Because Toni Hollinger failed to file an expert report as required by section 74.351(b), we reverse the trial court's order denying Dr. Saleh and Sher Institute's motion to dismiss Toni Hollinger's claims against them. We remand this matter to the trial court for entry of a dismissal with prejudice of Toni Hollinger's claims against Dr. Saleh and Sher Institute.

Section 74.351(b) requires that if an expert report has not been served within the statutorily required period of time, upon the motion of the affected physician or health care provider, in addition to dismissing the claim with prejudice, the trial court shall enter an order awarding reasonable attorney's fees and costs. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b); *see also Hernandez v. Ebrom,* 289 S.W.3d 316, 318 (Tex.2009) (if timely and sufficient report not served, trial court must award attorney's fees and costs and dismiss case with prejudice). Having concluded the trial court erred in denying Dr. Saleh and Sher Institute's motion to dismiss Toni Hollinger's claims against them under section 74.351(b) of the civil practice and remedies code, we remand this matter to the trial court for determining and awarding Dr. Saleh and Sher Institute's reasonable attorney's fees and costs.

### Conclusion

We dismiss the appeal as to appellee George Hollinger. We reverse the trial court's order denying Dr. Saleh and Sher Institute's motion to dismiss Toni Hollinger's claims against them. We remand this matter to the trial court for the limited purposes of determining and awarding Dr. Saleh and Sher Institute's reasonable attorney's fees and costs and for entry of an order dismissing with prejudice Toni Hollinger's claims against them.